# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | * |
| | * |
| v. | *     Case No.: RWT 04cr234 |
| | * |
| **NORBERTO QUINONES.** | * |
| | * |

## MEMORANDUM OPINION

Pursuant to 18 U.S.C. § 3582(c)(2), Norberto Quinones, Jr. seeks a reduction of the sentence that he currently serves for conspiracy to distribute and possess 50 grams or more of crack cocaine. Specifically, Quinones requests that he be resentenced in accordance with the Fair Sentencing Act of 2010. For the reasons set forth below, the Court will deny Quinones's Motion.

## FACTS

On March 1, 2006, Quinones was charged as one of three defendants in a 22 Count Fourth Superseding Criminal Indictment. ECF No. 77. Quinones's charges related to his involvement in a conspiracy to distribute crack cocaine and marijuana in open-air drug markets in Forestville, Maryland between 2000 and 2002. *See id.* at 2.

After a jury trial, Quinones was convicted of conspiracy to distribute and possess with intent to distribute marijuana and cocaine base ("crack cocaine") in violation of 21 U.S.C. § 846 (Count 1); conspiracy to possess firearms in furtherance of a drug trafficking crime in violation

of 18 U.S.C. § 924(o) (Count 2); possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts 3 and 4); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 5). *See* Quinones Judgment, ECF No. 152. As to Count 1, conspiracy to distribute and possess marijuana and crack cocaine, the jury found that 50 grams or more of crack cocaine was attributable to Quinones. *See* Verdict Form ¶ 9, ECF No. 135. The jury also found one of Quinones's co-defendants guilty of murder as a result of the co-defendant's possession and discharge of a firearm in furtherance of a drug trafficking offense. *See id.* at ¶ 17.

For the purposes of determining a defendant's offense level, offenses covered under U.S.S.G. § 2D1.1, *Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy*, are grouped together. *See* U.S.S.G. § 3D1.2, *Groups of Closely Related Counts*; *see also* Quinones Presentence Report ¶ 28. The offense level assigned to a group of counts is the offense level of the most serious count within the group. *Id.* at ¶ 29. Accordingly, Counts 1-4 were grouped together, and the base offense level for this group was level 34—the base offense level for conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine and marijuana. *See* Quinones Presentence Report ¶ 31.

However, at Quinones's sentencing on May 7, 2007, this Court determined that the murder perpetrated by Quinones's co-defendant was done in furtherance of the drug conspiracy and was reasonably foreseeable to Quinones as a co-conspirator. *See* Sentencing Hr'g Tr. 14:7-13. Thus, in accordance with U.S.S.G. §2D1.1(d)(1), the Court determined that Quinones's

2

base offense level was 43, the base offense level for First Degree Murder.[1] Quinones was sentenced to life imprisonment for Count 1, 240 months imprisonment as to each of Counts 2, 3, and 4 (concurrent to Count 1), and 60 months imprisonment as to Count 5[2] (to run consecutively). *See* Quinones Judgment.

Quinones appealed his convictions, which the Fourth Circuit affirmed on May 21, 2010. *See Quinones v. United States*, 378 Fed. Appx. 349 (4th Cir. 2010). The United States Supreme Court denied certiorari on December 13, 2010. *See* 2010 U.S. LEXIS 9809.

On December 9, 2010, Mr. Quinones filed a Motion for Modification of an Imposed Term of Imprisonment pursuant to 18 U.S.C. § 3582(c)(2). ECF No. 215. The government filed a Response on February 25, 2011, ECF No. 217, to which Mr. Quinones filed a Reply on March 10, 2011, ECF No. 218. The issues at hand are fully briefed and no hearing is deemed necessary pursuant to Local Rule 105.6.

## **ANALYSIS**

Quinones argues that he should be resentenced under the Fair Sentencing Act ("FSA") of 2010 so that his sentence reflects the penalties that are in place today for crack cocaine offenses, rather than the higher penalties in place at the time of his sentencing. *See* Pl.'s Mot. for Modification 3. The FSA amended the Controlled Substances Act ("CSA") by raising the amount of crack cocaine required to trigger the mandatory 10-year minimum and life imprisonment maximum from 50 grams to 280 grams. *See* Pub. L. No. 111-220, 124 Stat. 2372

---

[1] The U.S.S.G. for *Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy*, states that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killings taken place within the territorial or maritime district of the United States, apply §2A1.1 (First Degree Murder) . . . if the resulting offense level is greater than that determined under this guideline." §2D1.1(d)(1) (cross-referencing sentencing guidelines for *First Degree Murder*).

[2] The guideline sentence for a defendant convicted under 18 U.S.C. § 924(c) is the minimum term of imprisonment required by statute (5 years to run consecutively). *See* U.S.S.G. §2K2.4(b).

(2010). The Act also mandated that the United States Sentencing Commission promulgate a temporary, emergency guideline to reflect the FSA amendments. *Id.*

Prior to the enactment of the FSA, the penalty provision of the CSA equated one gram of crack cocaine with 100 grams of powder cocaine. *See Logan v. United States*, 2011 U.S. Dist. LEXIS 46475, *3 (D. Md. Apr. 28, 2011) (discussing the "100-to-1" crack to powder cocaine ratio). For example, previously the CSA required only 50 grams of crack cocaine to trigger a mandatory minimum sentence of ten years imprisonment, yet required 5,000 grams or more of powder cocaine to mandate that same minimum sentence. *See id.* The FSA reduced the crack-powder cocaine ratio to approximately 18-to-1, *see United States v. Wilson*, 401 Fed. Appx 760, 762 (4th Cir. 2010), and currently requires 280 grams of crack cocaine to trigger the 10-year mandatory minimum and lifetime maximum sentences under the CSA. *See* Pub. L. No. 111-220.

Here, it is undisputed that the offenses in question occurred prior to the enactment of the FSA on August 3, 2010. *See* Fourth Superseding Indictment 1-2. Quinones was sentenced for the offenses of which he was found guilty in May of 2007, prior to the enactment of the FSA. *See* Verdict Form. Quinones, however, argues that his sentence should be reduced pursuant to the FSA penalty amendments because (1) Congress intended the FSA to apply retroactively and (2) because his conviction did not become final until December 13, 2010, when the Supreme Court denied certiorari. *See* Pl.'s Reply 5-6. The government opposes Quinones's motion, arguing that Fourth Circuit case law states that the FSA may not be applied retroactively to conduct that occurred prior its enactment. *See* United States' Resp. 3.

This Court believes the Government is correct; the Fourth Circuit has indicated in multiple, unpublished opinions that the FSA is not retroactive and is only applicable to defendants who committed their offenses after its effective date. *See, e.g.*, *United States v.*

*McDougald*, 2011 U.S. App. LEXIS 6687, *2 (4th Cir. Apr. 1, 2011) (per curiam) (affirming defendant's sentence for conspiracy to distribute and possess crack cocaine and holding that FSA does not apply because defendant's conduct predated the enactment of the Act); *see also Wilson*, 401 Fed. Appx. At 762 ("[Defendant] is not entitled to sentence reduction to reflect the 18:1 ratio because the Fair Sentencing Act does not apply retroactively."). Moreover, the so-called General Savings Statute states that:

> The repeal of any statute shall not have the effect to release or extinguish an penalty . . . incurred under such statute . . . unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action of prosecution for the enforcement of such penalty[.]

1 U.S.C. § 109.[3] "Thus, unless the repealing or amending statute explicitly states that it is retroactive, the General Savings Statute 'saves' the old penalties that were in effect when the offense was committed." *Logan*, 2011 U.S. Dist. LEXIS 46475, at *4. Because the FSA does not state that its amendments to the CSA apply retroactively, courts must apply the crack cocaine penalties that were in effect at the time that the offenses were committed. *United States v. McAllister*, 401 Fed. Appx. 818, 820 n.* (4th Cir. 2010) (per curiam). Accordingly, the FSA does not apply to Quinones because all of the offenses in question occurred before its enactment.

Moreover, even if the FSA were applied retroactively, Quinones's final offense level would remain at level 43. As discussed *supra*, Counts 1-4 were grouped together for sentencing purposes pursuant to U.S.S.G. §3D1.2. *See* Quinones Presentence Report ¶¶ 27-29. In 2007, when Quinones was sentenced, the base offense level for 50 grams or more of crack cocaine resulted in a base offense level of 34. *See id.* ¶ 31. Currently, the base offense level for at least 50 grams, but less than 150 grams of crack cocaine, is 30.

---

[3] This statute applies as well to amended legislation. *Korshin v. Comm'r*, 91 F.3d 670, 674 n.5 (4th Cir. 1996).

However, as explained above, Quinones was sentenced to life imprisonment on Count 1 on the basis that the murder perpetrated by his co-conspirator was a foreseeable result of the conspiracy of which Quinones was a part. Thus, the amount of crack cocaine attributed to Quinones was irrelevant to his final offense level, as Quinones's base offense level calculation of 43 resulted from the application of the sentencing guidelines for First Degree Murder. The guidelines in effect today for violations of 21 U.S.C. § 846[4] continue to instruct courts to apply an offense level of 43 where a victim is killed under circumstances that would constitute murder had the killing taken place within a United States jurisdiction. *See* U.S.S.G. §2D1.1(d)(a) (cross-referencing §2A1.1, *First Degree Murder*). Accordingly, Mr. Quinones's high offense level, and consequent life sentence, would not be altered by the retroactive application of the FSA.

## **CONCLUSION**

For the reasons stated above, this Court will deny Quinones's Motion for Modification of an Imposed Term of Imprisonment. A separate Order follows.


Date: <u>July 28, 2011</u>  /s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

---

[4] Conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine and marijuana.